STATE OF MAINE STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE          SUPERIOR COURT
CUMBERLAND, ss.                                      CIVIL ACTION
                                                     Docket No. RE-02-64

2001 FEB 27 P 2: 11

WALTER LIBBY,

            Plaintiff,

v.                                          **DECISION AND JUDGMENT**
                                            **(Title to Real Estate Involved)**

JAY C. EDWARDS,
DEBORAH ZIMMERMAN, and
CASCO BAY LIMITED PARTNERSHIP,

            Defendants.

## I. BEFORE THE COURT

The plaintiff's complaint seeks judgment to quiet title, legally and equitably, and for declaratory judgment that he is the owner of certain parcels of land in Falmouth by way of adverse possession.

The defendants have counterclaimed, also seeking declaratory judgment to establish their right title and interest to the lots in question.

This case was tried to the court without a jury.

## II. BACKGROUND[1] AND DISCUSSION

The narrow issue in this case is plaintiff's claim of title to two lots claimed by adverse possession.

To establish his title, Walter Libby must prove his claim by actual, open, visible, notorious, exclusive and hostile use and possession of the two lots in question under a claim of right for more than 20 years. *See Stowell v. Swift*, 576 A.2d 204, 205 (Me. 1990).

---

[1] The court's recitation of the facts constitutes findings of fact by a preponderance of evidence unless stated otherwise.

The evidence of the history of title and use of the two lots is extensive, but it boils down to two central issues: hostile and exclusive.

The lots in question, 22B and 23 are clearly delineated on a plan for Underwood subdivision. (Plaintiff's Exhibit 2) There is no dispute concerning their location or boundaries. They are typical of the postage stamp lots located in this area of Falmouth Foreside on the shore of Casco Bay.

This area is historically known as Underwood Springs and was the site of Underwood Springs Bottling Company owned by Jay Edward's grandfather over a century ago. The site was a popular gathering spot for people from Portland who would ride the trolley to the shore to picnic and enjoy summer breezes. Later, many summer cottages were built that have been converted to year round residences. The plaintiff's house is typical of many in the neighborhood. They take up most of the small lots with little, if any, setback.

The plaintiff's home is on Lot 22A at 8 Glen Road. The front is located only a few feet from the roadway. The back, facing Casco Bay, literally sits on the common boundary with Lot 23. There is a small vacant area to the right between the house and Underhill Road that goes from Route 88 to a dead end as it descends southeasterly to Casco Bay. Lot 22B is to the left, between plaintiff's house and defendant's property. The plaintiff does own a 10' strop of 22B but over the years has made consistent use of the entire parcel for multiple purposes. Neither Jay Edwards nor any predecessor in title made any protest of plaintiff's use until after Libby erected a storage shed without a permit in 1994.

Plaintiff's father, Elmer Libby, purchased their property in 1941. Elmer resided there with his family until October 1949 when he was institutionalized. His wife, June, continued to live there until she passed away in June 2005. She raised four children at

2

the house. The plaintiff resided there until he dropped out of high school in 1962 when he joined the Air Force. Part of his military duty was at Dow Air Force Base in Bangor and he frequently came back to his Glen Road home. He left the Air Force in 1967 after suffering serious injury in a motor vehicle accident. After his recovery period he spent winters working on boats in Florida but always returned to Glen Road. He came back to Maine for good in 1975. Even in the years when he spent winters in Florida, he continually returned to Glen Road.

The Libby family made great use of all of Lot 22B and part of Lot 23 and maintained the area as theirs.

The parties talk of Lot 23 as a whole. Although it is one lot by description, the topographical/physical layout of the parcel divides it into two lots for any functional purpose.

Lot 23 is approximately 100' x 120' and runs completely across the backside of the Libby and Edwards property on Lots 22 and 20, from Underwood Road to the chain-link fence on the northeasterly border with the Bayside condominiums.

There is a small stream (Underwood Spring) at the bottom of a large ravine or gully that bisects Lot 23 diagonally from north to south.

The court finds that the Libby's use of the two sections of Lot 23 is and has been substantially different.

The area west of the stream, behind their house, has been extensively and continually used by the Libbys since the family acquired their property in 1941 to the present. There has been an abundant variety of activity and use on the property by all family members for over 60 years. There was no effort by the defendant or his predecessors to limit or restrict use by the Libbys at any time until the advent of this lawsuit. At all times, the Libbys used this part of Lot 23 as their own.

3

The eastern part of Lot 23 on the other side of the ravine is a different story. Although Walter Libby built a makeshift bridge or walkway over the upper part of the gully in the northern corner of Lot 23, and he would cut back brush, their use of the property was mainly as a play area in their youth and to keep brush trimmed back to preserve their view of Casco Bay. Playing typical outdoor games as youth in the pre-television/DVD/video-game era of today hardly qualifies as activity that any reasonable person or family would consider as conduct consistent with the control necessary to claim adverse possession. The Libby's use of the east side of the Underwood Spring gully was not notorious, hostile, exclusive, continuous or under a claim of right.

The court does find; however, by a preponderance of evidence that the plaintiff has proven the essential elements of adverse possession to that portion of Lot 23 beginning at a point where the northeast line of Lot 22B meets the northwest line of Lot 23, thence in a southeast direction towards Casco Bay to the center of the Underwood Spring stream at the bottom of the ravine, thence generally southerly to the northeasterly line of Underwood Road, thence northwesterly along Underwood Road to plaintiff's land, thence northeasterly along the line of the Libby's home lot, 22A, and 22B to the point of beginning.

Jay Edwards doesn't dispute the extensive use that the Libby family made of Lot 23 behind their home, but says they were doing so only with limited permission generated by his mother's empathy to June Libby after her husband, Elmer Libby, was institutionalized. The court compares the Libby's use of the property with Jay Edwards' testimony that he was present when his mother gave permission for use to June Libby. The evidence is clear that many neighbors enjoyed a close friendship with Mrs. Libby and expressed empathy for her when her husband left the home; however,

even if Jay Edwards was present when some type of conversation took place, he was a youngster and unlikely to have been a part of or to have appreciated the significance of any such conversation. In light of his other testimony demonstrating a substantial lack of memory or knowledge of activity in the neighborhood, the court gives no weight to his version when compared to the substantial evidence of the Libby's extensive, open, continuous, notorious and exclusive use of the area.

Walter Libby's claim of use is corroborated by the testimony of others, including his son and several non-family members with historical knowledge of activity in the area.

### III. SUMMARY

The court finds that the Libby's acquired a 10' strip of Lot 22B when they purchased their property in 1941 and that they have made continuous and extensive use of the entire portion of lot 22B since that time as well as that portion of Lot 23 located behind the house lot (22A) and Lot 22B southeasterly to the middle of Underwood Stream at the bottom of the ravine.

The plaintiff has not proven that he has acquired any interest in the portion of Lot 23 on the easterly of the ravine.

The parties referred to Lot 23 as a single indivisible parcel. Although it is legally one lot, for practical purposes, Underwood Spring physically divides it and the plaintiff's use is clearly divisible.

### IV. DECISION AND JUDGMENT

The clerk will make the following entries as the Decision and Judgment of the court:

    A. Judgment for plaintiff on his complaint that he has acquired full

       right title and interest, by adverse possession of all of Lot 22B

and a portion of Lot 23 on the plan known as Underwood subdivision (Plaintiff's Exhibit 2).

B. Judgment for defendants on plaintiff's claim to the remaining portion of Lot 23 southeasterly of the Underwood Spring, so-called, and on the counterclaim to said portion of Lot 23.

C. It is ORDERED, ADJUDGED AND DECREED that plaintiff, Walter Edward Libby is the owner of and vested with full right, title and interest in Lot 22B as set out on a diagram of Underwood subdivision (Plaintiff's Exhibit 2).

D. It is ORDERED, ADJUDGED AND DECREED that plaintiff Walter Edward Libby is the owner and vested with full right, title and interest in that portion of Lot 23 northeasterly of Underwood Spring, so-called, as shown on a diagram of Underwood subdivision (Plaintiff's Exhibit 2).

E. It is ORDERED, ADJUDGED AND DECREED that the plaintiff has not proven adverse possession to that portion of Lot 23 that lies to the southeast of Underwood Spring, so-called, and title thereto remains with defendants.[2]

F. No costs are awarded to either party.

SO ORDERED.

DATED:     February 26, 2007

Thomas E. Delahanty II
Justice, Superior Court

---

[2] The parties may seek an amendment of this judgment for the purpose of providing a more precise metes and bounds description of Lot 23 as generally described by the court.

FRANK CHOWDRY ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112

JOHN BANNON ESQ
JOHN SHUMADINE ESQ
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME 04104